UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF ILLINOIS

JOHN A. ALFORD,               )
                              )
    Plaintiff,              )
                              )
v.                            )     Case No. 13-1148
                              )
CAROLYN W. COLVIN,            )
Commissioner of Social Security )
Administration,               )
                              )
    Defendant.              )

## **O R D E R**

This matter is now before the Court on Plaintiff's Motion for Summary Reversal and the Commissioner's Motion to Affirm. For the reasons set forth below, Plaintiff's Motion for Summary Reversal [10] is DENIED, and the Commissioner's Motion to Affirm [12] is GRANTED.

### **BACKGROUND**

Plaintiff, John Alford ("Alford"), was 51 years' old at the time of his administrative hearing. (R34) He is right-handed, is 5'9" tall, and weighs 200 pounds. (R35) He is married and lives with his wife and son. Id. Alford graduated from high school and attended community college part-time. (R35-36) He is currently taking a correspondence course in computer programming and last worked on October 27, 2009 doing manual labor and driving a truck. (R36, R47)

During his administrative hearing, Alford testified that he can go up and down the stairs in his home because there are rails but cannot do it repeatedly. (R35) He drives himself a couple of times per month. Id. Alford is able to take care of his own personal hygiene, bathe, and dress himself. (R39) He has difficulty being on his feet for more than 20-30 minutes before he has a problem and can't sit for long periods at a time. (R42)

On a typical day, Alford gets up, takes his medication, has toast or cereal for breakfast, and then sits in the living room and reads. (R40) He fixes soup or a sandwich for himself and his son, then lays down for a nap in the afternoon due to the fatigue in his back. Id. Around the house, he needs to rest after mopping the kitchen floor and occasionally does dishes and vacuums the living room floor. (R37, R41) He also helps water flower pots in the yard, but his wife does the mowing. (R42) Alford accompanies his wife to do the grocery shopping and can carry a bag of groceries if it isn't too heavy; he indicated that he was able to lift a bag weighing 10-15 pounds. (R41) He occasionally goes out for lunch with his wife and attends church once a month. (R46) Hobbies include reading and playing around with the computer. Id.

Since his back surgery in October 2009, he has had little follow-up. X-rays were taken, but there was no follow-up MRI. (R44) He has not seen his surgeon, Dr. Kube, or any other back specialist since shortly after his surgery and has only followed up every six months with his family doctor, Dr. Stetter. (R44-45) Alford described his condition as stable, not getting better or worse. (R45) He has walked with the use of a cane since before his back surgery due to numbness in his left foot and balance problems. (R49)

On March 29, 2011, Alford applied for benefits, alleging disability that began on October 28, 2009. The application was denied both initially and on reconsideration. Alford requested a hearing before an administrative law judge ("ALJ"). A hearing was held before ALJ John Wood on October 2, 2012, at which Alford, who was represented by counsel, and vocational expert ("VE") James Ragains appeared and gave testimony.

The ALJ posed a hypothetical question to the VE:

Q Are you familiar with the jobs which exist in this
region?

A Yes, sir.

Q Could you define the region for us?

A The state of Illinois.

Q And you've reviewed the exhibits in the file that deal with the claimant's past work and heard the testimony today?

A Yes.

Q I know you prepared a work summary at 18-E. What I want to do now is ask you some hypothetical questions. Please disregard any information you may have gathered from reading the file or listening to the testimony other than that which I give you in the hypothetical.

Assume past work same as the claimant's; exertional capacity limited to light work with no climbing of ladders, ropes, or scaffolds; other postural functions could be performed occasionally; need to alternate sitting and standing periodically during the day, not at will, but when an opportunity would arise so that by the end of the day, the individual is still standing up to five of eight hours and sitting three of eight hours

A I'm sorry. What was that last part, Your Honor?

Q Sitting -- well, I'm talking about.the sit/stand option; that you can alternate sitting or standing periodically, not necessarily at will but as the opportunity will arise; that you're still at the end of the day standing five of eight hours and sitting up to three of eight hours.

A Oh, okay.

Q And need to avoid environmental hazards, such as unprotected heights and dangerous machinery. Past work would be out; correct?

A Yeah. All the past work was all at a medium to heavy exertional level. So yes.

Q If we now add the vocational factors by assuming that the hypothetical individual is of the claimant's age and

- 3 -

education and work history, in your opinion would there be a number of jobs in the national and/or regional economy, and would there be any transferability of skills?

A First of all, I don't believe there would be any transferrable skills, Your Honor, from past work for such an individual. I think there could be some unskilled, SVP 2 jobs that a person that you described could perform. The sit/stand option is not addressed in the DOT, but I can testify based on my experience in the field of vocational rehabilitation.

One example of work that could be done within the parameters of the hypothetical would be -- it's mail clerk, 209.687-026. I'm estimating, from data made available by the Department of Labor for the third quarter of 2011, that there are about 3,700 of those jobs in Illinois.

Another example, I think, would that's done at the bench or bench craft oriented work. A specific example would be assembler, small products. 706.684-022 is the code. There are about 13,300 of those jobs in Illinois overall. I would estimate that because of the sit/stand option, there probably would need to be a reduction -- maybe two-thirds of those jobs would be reduced.

Q Okay.

A so those are examples that I can give you.

Q Those are representative light jobs?

A Yes.

Q And they follow the national population trends?

A Yes.

> Q With regard to these jobs, how many absences per month would an employer typically tolerate from an employee and have them keep their job?
>
> A I don't believe more than one absence per month would be tolerated for job retention purposes, Your Honor.
>
> Q And is your testimony consistent with the Dictionary of Occupational Titles?
>
> A Other than the issue I did point it, it was consistent.
>
> ALJ: Okay. Counsel, any questions?
>
> ATTY: No.

(R50-53)

On October 24, 2012, the ALJ issued his decision. (R11) The ALJ found that Alford has the following severe impairment: degenerative back disorder. (R16) The ALJ determined, however, that he does not have an impairment or combination of impairments listed in or medically equal to one listed in 20 CFR Part 404, Subpart P, Appendix 1. Id. Based on the evidence of record, the ALJ concluded that Alford had the residual functional capacity to perform light work as defined in 20 C.F.R. 404.1567(b) except that the claimant may not climb ladders, ropes, or scaffolds; may perform other postural functions occasionally; needs to alternate sitting and standing periodically, not at will but as the opportunity allows amounting to in the aggregate of five hours of standing and three hours of sitting; and the claimant must avoid workplace hazards. (R17) He therefore found that Alford could not perform past relevant work as a material handler and truck driver, but could perform a significant number of jobs in the national economy, and his request for benefits was denied. (R21-22) Alford submitted a Request for Review of Hearing Decision. (R7) The Appeals Council declined review of his claim, and

the ALJ's decision became the final decision of the Commissioner. (R1-4) This appeal followed. The Court has jurisdiction over this action pursuant to 42 U.S.C. § 405(g).

## DISCUSSION

In order to be entitled to SSI and/or DIB, a plaintiff must show that his or her inability to work is medical in nature and that he or she is totally disabled. Economic conditions, personal factors, financial considerations, and attitudes of employers are irrelevant in determining whether a plaintiff is eligible for disability benefits. *See* 20 C.F.R. §§ 404.1566, 416.966 (1986).

The establishment of disability under the Act is a two-step process. First, the plaintiff must be suffering from a medically determinable physical or mental impairment, or combination of impairments, which can be expected to result in death, or which has lasted or can be expected to last for a continuous period of not less than 12 months. 42 U.S.C. § 1382(c)(a)(3)(A). Second, there must be a factual determination that the impairment renders the plaintiff unable to engage in any substantial gainful employment. McNeil v. Califano, 614 F.2d 142, 143 (7th Cir. 1980). That factual determination is made by using a five-step test. *See* 20 C.F.R. §§ 404.1520, 416.920.

The five-step test is examined by the ALJ, in order, as follows: (1) is the plaintiff presently unemployed; (2) is the plaintiff's impairment "severe" (20 C.F.R. §§ 404.1521, 416.921); (3) does the impairment meet or exceed one of the list of specified impairments (20 C.F.R. Part 404, Subpart P, Appendix 1); (4) is the plaintiff unable to perform his or her former occupation; and (5) is the plaintiff unable to perform any other work within the national economy?

An affirmative answer at any step leads either to the next step of the test, or at steps 3 and 5, to a finding that the plaintiff is disabled. A negative answer at any point, other than at step 3, stops the inquiry and leads to a determination that the plaintiff is not disabled. Garfield v. Schweiker, 732 F.2d 605 (7th Cir. 1984).

The plaintiff has the burdens of production and persuasion on steps 1 through 4. However, once the plaintiff shows an inability to perform past work, the burden shifts to the Commissioner to show ability to engage in some other type of substantial gainful employment. Tom v. Heckler, 779 F.2d 1250 (7th Cir. 1985); Halvorsen v. Heckler, 743 F.2d 1221 (7th Cir. 1984).

The Court's function on review is not to try the case *de novo* or to supplant the ALJ's finding with the Court's own assessment of the evidence. Pugh v. Bowen, 870 F.2d 1271 (7th Cir. 1989). The Court must only determine whether the ALJ's findings were supported by substantial evidence and whether the proper legal standards were applied. Delgado v. Bowen, 782 F.2d 79, 82 (7th Cir. 1986). In determining whether the ALJ's findings are supported by substantial evidence, the Court must consider whether the record, as a whole, contains "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." Richardson v. Perales, 402 U.S. 389, 401, 91 S.Ct. 1420 (1971). Credibility determinations made by the ALJ will not be disturbed unless the finding is clearly erroneous. Anderson v. Bessemer City, 470 U.S. 564, 573, 105 S.Ct. 1504 (1985); Imani v. Heckler, 797 F.2d 508 (7th Cir.), *cert. denied*, 479 U.S. 988, 107 S.Ct. 580 (1986).

In his appeal, Alford essentially argues that the ALJ's decision was not supported by substantial evidence. The primary support offered is a functional capacity evaluation that was

completed on September 17, 2013, which was more than 10 months after the ALJ issued his decision in this case. In other words, Alford argues that his impairments have become significantly worse following the ALJ's decision, and he is now in constant pain. The Commissioner correctly notes that while this change in condition may support a new application for benefits, the relevant time frame is the time the ALJ made his decision based on the evidence of record available to him. Eads v. Secretary of Health and Human Services, 983 F.2d 815, 817-18 (7th Cir. 1993). In fact, Alford does not actually challenge the findings of the ALJ as of the time he issued his decision, and his appeal in this case is therefore without merit.

The ALJ methodically considered and largely credited the opinions of the treating physicians. Alford underwent spinal fusion surgery in October 2009. In April 2010, he was prescribed work conditioning sessions, during which progress notes indicate that while he frequently reported being in pain, his symptoms disappeared when distracted. He displayed no visible signs of discomfort and ambulated with a fluid and equal gait. His April 28, 2010 discharge summary from this program indicated that Alford was functioning at the Light-Medium level of physical capacity.

On May 11, 2010, Alford completed a functional capacity evaluation ("FCE") at the Return to Work Center in Peoria. This evaluation confirmed that he was capable of functioning at the Light-Medium level of physical capacity, which is defined as lifting 35 pounds infrequently, up to 20 pounds frequently, and walking at either 3.0 miles per hour with no load or at a slower pace with up to 20 pounds. The evaluators found the physical requirements of Alford's past employment to exceed his capabilities at that time. Alford demonstrated few reliable pain behaviors; the pain behaviors that were demonstrated were usually made briefly

after reporting discomfort but abruptly disappeared when he was distracted or moved on to another task. Numerous inconsistencies were observed between his claimed maximum abilities and his actual demonstrated abilities. It was also noted that Alford often diverted attention or delayed his therapy by initiating conversations with the staff instead of performing the tasks as directed.

When examined by his surgeon, Dr. Kube, on May 25, 2010, Dr. Kube found that Alford demonstrated excellent strength in both legs. He noted that there were several inconsistencies in the FCE that were borderline for calling into question the legitimacy of Alford's effort during the exam. Given the results of the examination and the FCE from May 2010, Dr. Kube concluded that Alford was able to perform light-medium levels of activity and released him with that restriction.

Alford was referred to Dr. Kevin Henry for pain management in July 2010. Dr. Henry noted that he was taking OxyContin, Percocet, Ultram, Tylenol #3, Neurontin, Zanaflex, Norflex, and Celebrex for pain control. Alford was alert and oriented, with normal speech, cognition, and affect. His extremities were warm with no edema. While he had a full range of motion of the cervical spine, he claimed back pain with flexion past 30 degrees. Muscle relaxant helped some of his pain, and the only further treatment recommended was the use of a spinal cord stimulator.

In January 2011, his family physician, Dr. Stetter, prescribed pain medication for Alford's chronic lower back pain and directed him to return for follow-up in three months.

On June 18, 2011, consulting physician Dr. Peter Sorkin completed an internal medicine consultative exam. Dr. Sorkin did not find Alford to be in any acute distress, but he had

difficulty getting on and off the exam table, walked with an antalgic gait without the cane, and was unable to heel/toe walk. Alford had a normal range of motion in his shoulders, elbows, wrists, hips, knees, ankles, and cervical spine. Dr. Sorkin also observed that range of motion in the lumbar spine was limited, and there was decreased sensation down Alford's left leg.

A residual functional capacity assessment by Richard Smith on July 11, 2011 concluded that Alford could lift/carry 20 pounds occasionally and 10 pounds frequently; stand or walk about six hours in an eight hour workday; sit with normal breaks for about six hours in an eight hour workday; periodically alternate sitting and standing to relieve pain and discomfort; push and pull without limitation; and climb ramps/stairs, balance, stoop, kneel, crouch, or crawl occasionally. He could never climb ladders/ropes/scaffolds. Alford displayed no manipulative, visual, communicative, or environmental limitations with the exception of avoiding concentrated exposure to hazards. His subjective complaints as to the intensity and effects of his impairment were found to be only partially credible due to inconsistencies. This assessment was reviewed and affirmed by consulting physician, Towfid Arjmand, M.D. on September 19, 2011.

Alford continued to see Dr. Stetter periodically to receive refills on his pain medications. Progress notes from a October 2011 and January 2012 indicate a normal range of motion in Alford's back. In April 2012, progress notes for this visit indicate that his range of motion in his back is good but painful and refills for his pain medication were issued.

It is the province of the ALJ to resolve evidentiary conflicts. Ehrhart v. Secretary of Health and Human Services, 969 F.2d 534, 542 (7th Cir. 1992); Herr v. Sullivan, 912 F.2d 178, 181 (7th Cir. 1990). "Where conflicting evidence allows reasonable minds to differ as to whether a claimant is disabled, the responsibility for that decision falls on the [Commissioner] (or the

[Commissioner's] designate, the ALJ)." Walker v. Bowen, 834 F.2d 635, 640 (7th Cir. 1987). The existence of an evidentiary dispute is not grounds for reversing the ALJ's decision to credit one version of facts over another. Herr v. Sullivan, 912 F.2d 178, 181 n.4 (7th Cir. 1990) However, the ALJ must explain with particularity the basis of his decision. Young v. Secretary of Health and Human Services, 957 F.2d 386, 393 (7th Cir. 1992). Credibility determinations made by the ALJ will not be disturbed unless the finding is clearly erroneous. Anderson v. Bessemer City, 470 U.S. 564, 573, 105 S.Ct. 1504 (1985); Imani v. Heckler, 797 F.2d 508 (7th Cir.), *cert. denied*, 479 U.S. 988, 107 S.Ct. 580 (1986); Larson v. Astrue, 615 F.3d 744, 752 (7th Cir. 2010).

The ALJ found that Alford's claims of complete and total disability could not be fully accepted, given his admitted activities of daily living and the contrary medical evidence of record. The ALJ also discounted Dr. Stetter's assertion that Alford was severely limited in his ability to walk based on lack of objective medical findings or testing to support such an opinion. He further noted the opinions of Alford's surgeon and the consulting physicians that Alford was able to function in the light-medium range of work. As the ALJ's credibility finding consisted of a thorough review of the medical evidence of record in conjunction with Alford's statements, and the credibility determinations were explained in sufficient detail, they will not be disturbed by this Court. Accordingly, Plaintiff's challenge is without merit.

This is not a case where medical records were insufficient or incomplete, which could necessitate further development of the record. Rather, the medical records simply failed to compel the conclusion that Alford was disabled within the meaning of the Act at the time relevant to this application. Accordingly, the Court must conclude that the ALJ's determination

was supported by substantial evidence.

## CONCLUSION

For the reasons set forth herein, the Court finds that the ALJ's decision was supported by substantial evidence of record. Plaintiff's Motion for Summary Reversal [10] is DENIED, and the Commissioner's Motion to Affirm [12] is GRANTED. This matter is now terminated.

ENTERED this 1st day of May, 2014.

s/ James E. Shadid
James E. Shadid
Chief United States District Judge